# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| THE TAMARKIN COMPANY, | ) | CASE NO.  4:09-CV-2927 |
| | ) | |
| | ) | EXPEDITED |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| CHAUFFEURS, TEAMSTERS, | ) | MEMORANDUM OPINION AND |
| WAREHOUSEMEN AND HELPERS | ) | ORDER |
| LOCAL UNION NO. 377, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter involves a labor dispute between Plaintiff The Tamarkin Company ("the Company") and Defendant Local Union No. 377 ("the Union") involving an arbitration award ("the Award") issued on December 23, 2009, in front of Arbitrator Marvin J. Feldman ("the Arbitrator"). Before the Court are the following motions:

(1) The Company's motion to vacate the Award; (Doc. No. 19.)

(2) The Company's motion for summary judgment as to the Union's counterclaim for arbitration fees; for a declaration that the CBA requires that FMCS be used for arbitrator selection in all cases; a declaration that Marvin Feldman was improperly selected by the Union as an arbitrator; a declaration that Feldman's award is invalid as a matter of law; an order of the parties to proceed to arbitration on the Perry grievance before a panel of FMCS arbitrators; an award of attorney's fees; (Doc. No. 30.) and,

(3) The Union's cross-motion to enforce the Award and cross-motion for summary judgment as to its counterclaim for arbitration fees. (Doc. No 31.)

For the following reasons, the Company's motion to vacate the Award is **GRANTED** and the Union's cross-motion to enforce the Award is **DENIED**. The Company's motion for summary judgment as to the Union's counterclaim for arbitration fees is **GRANTED**

and the Union's cross-motion for summary judgment as to its counterclaim is **DENIED**. The Company's motion for summary judgment as to declaratory relief and an order compelling arbitration before a panel of FMCS arbitrators is **GRANTED IN PART**. The Company's motion for attorney's fees is **DENIED**.

## I.     BACKGROUND

The Tamarkin Company is a corporation with its principal place of business in Youngstown, Ohio, and is engaged in the distribution of frozen goods to retail supermarkets. The Union is an Ohio Labor Organization affiliated with, and chartered by, the Teamsters International with its principal place of business in Youngstown, Ohio. The Company and the Union are parties to a collective bargaining agreement ("the CBA") dated May 7, 2007, and in force between May 11, 2006 and May 13, 2010. (Doc. No. 1-2.) Article XVII of the CBA governs grievance procedures that may arise under the agreement and includes arbitration provisions. Relevant here, paragraph C of article XVII states in relevant part:

> The Company and the Union shall select an arbitrator from a panel of nine (9) Federal Mediation and Conciliation Service ["FMCS"] arbitrators with NAA credentials. Either the Company or the Union may reject the first panel of arbitrators.

Also relevant is paragraph D, which states in relevant part:

> Cases involving discharge shall be processed through AAA expedited arbitration procedure. The parties will obtain an NAA certified arbitrator from the Western Pa and Eastern Ohio area pursuant to the procedures outlined in (C) above on an expedited basis.

In either late October or early November 2009, Union steward Jerry Perry was discharged from his employment with the Company. On November 4, the Union filed a grievance challenging Perry's discharge. The following day, the Union filed with the AAA a demand for an expedited labor arbitration on Perry's behalf. (Doc. No. 1-3.) On November 6, the

2

Company objected to the AAA and requested, based on "consistent past practice," that the AAA refrain from issuing an expedited panel of arbitrators. (Doc. No. 1-4.) After several e-mails between the parties and between the parties and the AAA (Doc. Nos. 1-5, 1-6), the AAA issued a November 10 letter containing a "list of names selected from [AAA's] Panel of Labor Arbitrators [. . .] said Arbitrators are from the National Academy of Arbitrators who are from Eastern Ohio and Western Pennsylvania." (Doc. No. 1-8.) The letter further states, "[p]lease note that if a party does not return the list in the time specified [7 days], all names will be deemed acceptable." (*Id.*)

Thereafter, the Union responded to the AAA with its ranked selections. The Company did not respond with ranked selections, but rather reiterated its position that it did not consent to an expedited arbitration. (Doc. No. 1-9). While the AAA continued its procedural process, Counsel for the parties continued to seek resolution of the matter, albeit unsuccessfully. On December 2, the AAA appointed Defendant Marvin J. Feldman as the arbitrator. (Doc. No. 1-10.) The dispute regarding the selection of the arbitrator continued, now involving Feldman, who wrote in a letter directed to both parties via the AAA, indicating that "[A]rbitrability will be determined at the hearing. If I find at hearing that the contract contains an arbitration clause to satisfy a grievance between the parties, I will proceed to final Award." (Doc. No. 1-11.) The AAA ultimately set an arbitration date of December 22 in front of Arbitrator Feldman. The parties continued to negotiate a resolution, but were unable to agree on a mutually agreeable method to select an arbitrator.

On December 17, the Company filed its Complaint and contemporaneously filed an emergency motion to stay the December 22 arbitration. (Doc. Nos. 1, 2.) The Union filed a motion to dismiss the Company's complaint on December 18. (Doc. No. 5.) On December 21,

3

2009, this Court issued a memorandum opinion and order denying the Company's emergency motion to stay the arbitration, finding the Court did not have jurisdiction under the Norris-LaGuardia Act to issue an injunctive remedy. (Doc. No. 10 at pp. 8-9.) In that same opinion, this Court denied the Union's motion to dismiss the Company's complaint, finding the question presented by the complaint, whether a grievance is before a proper arbitration forum, to be a question of substantive arbitrability appropriate for judicial resolution. (*Id.* at pp. 4-5.)

On December 22, Feldman conducted the arbitration hearing at the Union Hall. The Company appeared at the hearing solely to renew its objection to the selection of Feldman, and to request that Feldman discontinue the hearing in light of this Court's December 21 opinion. Feldman denied the Company's request and the Company withdrew from the hearing.[1] Feldman then proceeded to conduct the arbitration hearing *ex parte*. On December 24, Feldman issued his decision, a one-page order finding in favor of the Union and awarding reinstatement and back wages and benefits to grievant Perry. (Doc. No. 31-1.) Specific to the contested arbitrability issue of whether he was improperly selected, Feldman addressed the issue as follows, in its entirety: "The arbitrator further finds that he does have jurisdiction under the contract herein." (*Id.*) For his services, Feldman billed the parties $3,440, to be evenly split between the parties. The Union paid this fee in its entirety after the Company refused to pay.

After a case management conference, this Court assigned this case to the expedited track. On January 11, 2010, the Company voluntarily dismissed Feldman and the American Arbitration Association from the lawsuit. (Doc. Nos. 24, 25.) Pursuant to the expedited

---

[1] There is an indication that Feldman may have requested that the Company submit a brief to him on the issue of his selection. The Court finds that compliance with the request was unnecessary for at least two reasons: (1) Feldman was an original party to this lawsuit and should have been well aware of the arguments the Company was making relative to the selection of the arbitrator pursuant to the terms of the CBA; and (2) While Feldman was a party to this litigation, and prior to the arbitration, this Court determined that the selection of the arbitrator raised a question of substantive arbitrability appropriate for judicial review and that Feldman himself had a conflict of interest in deciding the issue.

4

briefing schedule, on February 2, 2010, the Company filed its motion for summary judgment. (Doc. No. 30.) That same day, the Union filed a joint motion to enforce the Award and for summary judgment. (Doc. No. 31.) Both sides filed respective oppositions on February 16, 2010 (Doc. Nos. 34, 35) and thereafter filed respective replies. (Doc. Nos. 39, 40.) Against this backdrop, this matter is ripe for decision.

## II.  DISCUSSION

The Court will first address the Company's motion to vacate the Award. While the Union styles its own motion as one for confirmation and enforcement of the award in form, in function it is an opposition to the Company's motion to vacate. The discussion of the motion to vacate will necessarily resolve, of course, both motions. If the Union prevails in its opposition to the motion to vacate, the Award will be confirmed and enforced, and if the Company prevails, the Award cannot be confirmed nor enforced, but will be vacated.

### A.  Motion to Vacate

A court's review of an arbitrator's decision is "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens v. United Steelworkers of Am., AFL-CIO*, 913 F.2d 1166, 1169 (6th Cir. 1990) (citing *United Steelworkers v. Enterprise Wheel & Car. Corp*., 363 U.S. 593, 599 (1960)). In 2007, in *Michigan Family Resources, Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007), the Sixth Circuit overruled *Cement Divisions, National Gypsum v. United Steelworkers Local 135*, 793 F.2d 759 (6th Cir. 1986) and established a new standard for reviewing arbitration decisions in order to adhere to the post-*Cement Divisions* Supreme Court decisions in *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc*., 484 U.S. 29 (1987) and *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001).

In *Michigan Family Resources*, the Circuit instructed courts to limit their inquiries as to an arbitrator's decision to the following:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

*Michigan Family Resources*, 475 F.3d at 753 (adopting the questions of "procedural aberration" as identified by *Misco* and *Garvey*).

> 1.    *Arbitrator Feldman Acted "Outside His Authority" and Resolved a Dispute Not Committed to Arbitration (before Him)*

The first question this Court must ask under *Michigan Family Resources* is "[d]id the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration?" *Id.* At first blush, a literal reading of this question might end the inquiry as to this case with the conclusion that the CBA between the Company and the Union mandates arbitration for grievances over employee discharges as required by Article XVII therein. A close read of *Michigan Family Resources*, however, compels a more protracted inquiry. There, the Court briefly discussed the question of whether the arbitrator acted outside his authority and resolved a dispute not committed to arbitration, a question that was undisputed in the case, by stating:

> And no one disputes that the collective bargaining agreement committed this grievance to arbitration or disputes that this arbitrator was one of the five arbitrators selected by the parties to be eligible to resolve this dispute. The arbitrator, in short, was acting within the scope of his authority.

*Id.* at 754. Moreover, "federal courts retain authority to ensure that the arbitration award grows out of a legitimate process: that the collective bargaining agreement commits the dispute at hand to arbitration." *Id.* at 752 (citing *Misco's* requirement that the arbitrator act within the scope of

6

his authority). Indeed, as *Misco* explains, in light of the statutory preference in the Labor Management Relations Act for private settlement of labor disputes without governmental intervention, it is "because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than a judge" that the parties must accept the arbitrator's view of the facts and the meaning of the contract. *Misco*, 484 U.S. at 37-38. A award made by an arbitrator that is not "chosen by them," then, cannot be said to "grow[] out of a legitimate process." Therefore, this Court holds that a dispute in which an arbitrator was not properly selected by the parties is one in which the arbitrator "acted 'outside his authority' by resolving a dispute not committed to arbitration" for the purposes of the *Michigan Family Resources* test. *Michigan Family Resources*, 475 F.3d at 753.

As stated above, the CBA between the Company and the Union mandates arbitration for employee discharges. But that does not mean, however, that the CBA committed this dispute to arbitration before this arbitrator. Although the dispute clearly involved an employee discharge, as discussed below, Feldman had no authority to decide the dispute because he was not properly selected under the relevant provisions of the CBA.

Paragraph C of article XVII states, in relevant part:

> The Company and the Union shall select an arbitrator from a panel of nine (9) Federal Mediation and Conciliation Service ["FMCS"] arbitrators with NAA credentials. Either the Company or the Union may reject the first panel of arbitrators.

Also relevant is paragraph D of article XVII, which states in relevant part:

> Cases involving discharge shall be processed through AAA expedited arbitration procedure. The parties will obtain an NAA certified arbitrator from the Western Pa and Eastern Ohio area pursuant to the procedures outlined in (C) above on an expedited basis.

Neither the Company nor the Union contest the fact that Feldman was not

selected from a panel of nine FMCS arbitrators with NAA credentials, but was selected from a list of arbitrators promulgated by the AAA.[2] The issue that is central to this dispute is, rather, a pure question of law, namely contract interpretation: in cases of employee discharge, does the CBA require the arbitrator to be selected from a panel of nine FMCS arbitrators with NAA credentials?

a)      Paragraph D is Clear and Unambiguous and the Court Cannot and Need Not Resort to Extrinsic Evidence to Determine its Meaning

The resolution of this dispute turns on the parties' disputed interpretation of the words "outlined in (C) above" as found in paragraph D. The Company submits that this phrase is "clear and unambiguous" and requires that the parties select an arbitrator according to the procedures listed in paragraph C, which requires selection from a panel of nine FMCS arbitrators with NAA credentials. The Union asserts that this phrase is ambiguous on its face and thus necessitates "resort to extrinsic evidence such as bargaining history and 'past practice' evidence to understand the parties' intent concerning this technical arbitration procedure language." (Doc. No. 34 at p. 2.) The Union argues that:

> the words "as outlined" were a shorthand way of stating that AAA would follow the <u>general approach</u> used in Section C for regular arbitration when selecting the arbitrator from its own AAA list. That is, AAA would <u>emulate</u> that approach when administering <u>its own list.</u>

(*Id.* at 9 (underlining in original).) Moreover, the Union asserts:

> The parties intended the reference to Section C to mean that it would serve as an "outline" of what the AAA should do in issuing the panel itself. <u>This was just a shorthand way of saying that not all of the procedures in Section C would apply, namely, the use of FMCS for the panel was expressly intended not to apply to AAA expedited arbitrations.</u>

---

[2] The Union submits that Feldman is apparently also an FMCS arbitrator, and that the Company was given an opportunity to reject the first panel of arbitrators promulgated by the AAA, but these facts are wholly irrelevant. The issue remains that the panel of arbitrators from which Feldman was chosen was not a panel of FMCS arbitrators with NAA credentials, as required by the CBA.

(*Id.* at 4 (underlining in original).) The Court notes with some incredulity that, as to the Union's first argument as to the meaning of the words "as outlined," that the term "as outlined" does not appear in paragraph D. The term used in the CBA states "[. . .] pursuant to the procedures outlined in (C) [. . .]."

The enforcement and interpretation of collective bargaining agreements under Section 301 is governed by substantive federal law, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957), but the Sixth Circuit has held courts should apply traditional rules for contractual interpretation so long as their application is consistent with federal labor policies. *UAW v. Yard-Man, Inc*., 716 F.2d 1476, 1479 (6th Cir. 1983). To determine the parties' intent as to the procedures utilized to select an arbitrator to hear an employee discharge grievance, the Court first looks to explicit contractual language, but will resort to extrinsic evidence if the language of the labor agreements is ambiguous. *UAW v. BVR Liquidating*, 190 F.3d 768, 772, 774 (6th Cir. 1999). Ambiguous language is "subject to two reasonable interpretations." *Wulf v. Quantum Chem. Corp*., 26 F.3d 1368, 1376 (6th Cir. 1994). "[E]xtrinsic evidence, however, *cannot be considered* when contract language is unambiguous." *Yolton v. El Paso Tenn. Pipeline Co*., 435 F.3d 571, 593 (6th Cir. 2006) (emphasis added). While the Supreme Court has stated that "words in a collective bargaining agreement [. . .] are to be understood only by reference to the background which gave rise to their inclusion," *United Steelworkers of America v. American Mfg. Co*., 363 U.S. 564, 570 (1960), the Sixth Circuit has held "that this language from the *Steelworkers* case does not demand consideration of bargaining history and other extrinsic evidence when the contract is clear and unambiguous." *International Union UAW Local 91 v. Park-Ohio Industries, Inc*., 876 F.2d 894 (6th Cir. 1989).

A contract is ambiguous when it is susceptible to two or more reasonable

interpretations, each of which is consistent with the contract language. *Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009). When both parties offer "plausible interpretations of the agreement drawn from the contractual language itself, [this] demonstrates that the provision is ambiguous." *Int'l Union UAW Local 91 v. Park-Ohio Industries, Inc.*, 876 F.2d 894 (6th Cir. 1989). It is a well-established principle of contract interpretation that a court should not read an ambiguity into a contract where none exists. *Commemorative Air Force*, 585 F.3d at 900 (citing *Babinski v. Am. Family Ins. Group*, 569 F.3d 349, 352 (8th Cir. 2009)).

The Court holds that Article XVII, paragraph D, of the CBA is not ambiguous. The sentence in dispute, "[T]he parties will obtain a NAA certified arbitrator from the Western Pa and Eastern Ohio area pursuant to the procedures outlined in (C) above on an expedited basis" is only susceptible to one reasonable interpretation. The Union's interpretation, which would mandate some provisions of paragraph C to be followed while simply ignoring others, is simply not plausible. To interpret the phrase "pursuant to the procedures outlined in (C) above" as providing a "shorthand way of saying [that some but] not all of the procedures in Section C would apply" borders on frivolous.

Moreover, the Union's argument that the AAA would "follow the general approach used in Section C for regular arbitration when selecting the arbitrator from its own AAA list" is inconsistent with the text of paragraph D. (Doc. No. 34 at p. 9.) Paragraph D does not require the AAA to select "the arbitrator from its own AAA list," as the Union suggests, but rather requires *the parties to obtain* an arbitrator to hear an employee discharge grievance. This requires an affirmative action on part of the parties to acquire, or procure, an arbitrator, to hear the grievance. Paragraph D also clearly specifies how the parties are to obtain the arbitrator,

10

namely, "pursuant to the procedures outlined in (C) above" and dictates that the obtaining of an arbitrator shall be "on an expedited basis." The inclusion of the words "on an expedited basis" in the sentence from paragraph D relating to arbitrator selection also weighs against the Union's argument that the "AAA would generate the list and use Section C as a general approach to administering the arbitrator selection process." (Doc. No. 40 at p. 7.) If the parties intended the AAA to generate the list and administer the arbitration selection process according to their "expedited arbitration procedure," there would be no reason to mandate that "parties will obtain" an arbitrator "on an expedited basis." Indeed, if the Union were correct, the parties would not need "to obtain" an arbitrator, nor would they need to act on "an expedited basis," because both of these requirements would be subsumed by the AAA expedited arbitration procedure. But both requirements appear in the plain text of paragraph D, and the Court must accord them meaning.

Nor can the effect of any asserted "past practice" concerning arbitrations of employee discharge grievances under this or a predecessor CBA affect this analysis.[3] "[P]ast practice or custom should not be used to interpret or give meaning to a provision or clause of the collective bargaining agreement that is clear and unambiguous." *Beacon Journal Publ'g Co. v. Akron Newspaper Guild*, 114 F.3d 596, 601 (6th Cir. 1997). *See also Edwards v. UPS*, 99 Fed. Appx. 658, 660 (6th Cir. 2004) ("Past practice or custom cannot trump clear and unambiguous terms of a CBA."); *OmniSource Corp. v. USW, Local 9130*, No. 98-3603, 1999 U.S. App. LEXIS 17970 at *2 (6th Cir. July 23, 1999) (holding that where the CBA's terms are clear, the court must enforce those terms even where the company engaged in a contrary practice for a number of years).

The Union has not offered a plausible interpretation of Article XVII drawn from

---

[3] The Company appears to recognize this fact and has abandoned its argument that the Perry grievance was not subject to handling on an expedited basis based on past practices.

the contractual language itself. Its proffered interpretation is unreasonable on its face. The plain language of the contract is not ambiguous and is susceptible to only one reasonable meaning. Therefore, no inquiry is into extrinsic evidence is necessary, or permitted. *Yolton*, 435 F.3d at 593.

        b)      The Company Has Not Failed to Exhaust its Administrative Remedies

        The Union also argues that the Company has failed to exhaust its administrative remedies and has therefore "simply foreclosed its opportunity to contest this matter." This argument is wholly unavailing. The Union cites *Toyota of Berkeley v. Auto. Salesmen's Union, Local 1095*, 834 F.2d 751 (9th Cir. 1987), for the proposition that the Company's failure to participate in the *ex parte* arbitration hearing before Feldman forecloses its opportunity to contest the award. In *Toyota of Berkeley*, the employer moved to vacate an award made at an *ex parte* hearing it refused to attend on the basis that the timeliness of the grievance and demand for arbitration was not arbitrable. There, the court noted that "the dispute over the timeliness of the Fontes grievance was arbitrable" as "timeliness is a *procedural* question subject to arbitration." *Id.* at 754. Moreover, in *Toyota of Berkeley*, the union and the company "did agree on an arbitrator," and the company had "showed every intention to participate over a period of nearly three years." *Id.* In this case, the Company and the Union did not agree on Feldman as an arbitrator, the Company repeatedly objected to arbitration before Feldman, and appeared at the hearing to specifically preserve its objection to the proceedings.

        Nor does *Int'l Brotherhood of Teamsters, Chauffeurs v. Dean Foods Co.*, No. 91-6259, 1992 U.S. App. LEXIS 16875 (6th Cir. July 14, 1992), also cited by the Union, compel a different conclusion. In *Dean Foods*, an unpublished decision, the court affirmed the dismissal of a union's action for breach of a collective bargaining agreement because the union failed to

12

exhaust its contractual remedies. There, the dispute arose "out of an objection to the procedures employed in the resolution of [the underlying dispute]," namely the composition of an arbitration panel. *Id.* at *9. The court in *Dean* found the panel "acted pursuant to the authority vested in it by the [agreement]; whether the composition of the [panel] failed to satisfy the requirements of the [agreement] clearly turns on an interpretation of that agreement" and that the union, by failing to submit the issue, a *procedural issue* relating to the composition of a panel that the union conceded had authority to arbitrate disputes between the parties, to arbitration, failed to exhaust its available contractual remedies by seeking resolution through the courts rather than through arbitration.

Here, of course, and unlike *Dean Foods*, Feldman had no authority to arbitrate this dispute between the parties. The Company never acquiesced to Feldman's improper selection and objected to his appointment multiple times. The Company appeared at the hearing to specifically object to Feldman's appointment and reiterate its contention that Feldman had no authority to hear the dispute. "A party may not be forced to arbitrate any dispute that it has not, by contract, obligated itself to arbitrate." *USW v. Mead Corp.,* 21 F.3d 128, 131 (6th Cir. 1994). Contrary to the Union's suggestion, the Company has not failed to exhaust its administrative remedies and has, rather, repeatedly refused to arbitrate a dispute before an improperly selected arbitrator acting outside his authority.

        c)      The Company Has Not Waived Its Objection to Feldman's Selection

The Union next argues that the Company waived any objection it might have had to Feldman's selection.  The Court disagrees.

As recited above, the Company initially objected to the arbitration on the basis that "consistent past practice" had effectively modified the arbitration agreement so as to not

13

require the use of expedited procedures. (Doc. No. 1-4). The Company continued to object on this basis when it informed the AAA, in writing, that it would "not be selecting from the information [the list of AAA arbitrators] you provided." (Doc. No. 1-9.) The Union contends that the Company "did not even communicate its desire for an FMCS panel before Feldman's appointment, depriving the Union of any opportunity to even address the issue, if any" and that the Company therefore "waived all of its objections." (Doc. No. 31 at p. 15.)

"A party may waive its objection to the jurisdiction of the arbitrators by acquiescing in the arbitration with knowledge of the possible defect." *Nationwide Mut. Ins. Co. v. Home Ins. Co*., 330 F.3d 843, 846 (6th Cir. 2003). In support of its argument that the Company has waived its objection to Feldman's jurisdiction, the Union cites *Brook v. Peak Int'l, Ltd*., 294 F.3d 668 (5th Cir. 2002), for the proposition that where the "AAA wrongly provided list of fifteen arbitrators instead of nine and used wrong method of selection [. . .], the failure to object at the time on that basis constituted a waiver." (Doc. No. 31.) The Union misstates the holding of *Brook*, and even a cursory read of that case reveals it to be of no help to the Union in this case.

*Brook* involved arbitration over severance benefits, administered by the AAA pursuant to an employment agreement. "To state that the AAA failed to follow the simple selection procedure outlined in Brook's Employment Agreement is insufficient: the AAA flouted the prescribed procedures and ignored complaints from both sides about the irregular selection process." *Id*. at 673. The court also noted the uncontroversial principle that, because "arbitration remains an adversarial event, [. . .] parties must insist upon the enforcement of their contractual rights before the arbitrators as they do in court." *Id*. In *Brook*, the plaintiff "never objected to the AAA's failure to follow the selection process in the Employment Agreement (until prompted by the federal magistrate judge long after the arbitration had run its course)."

14

The court in *Brook* held that, although the plaintiff had objected to the AAA's failure to follow its own selection rules, "he also condoned the AAA ignoring the Employment Agreement [. . .]." *Id.* The plaintiff had "fail[ed] to object to the error in the selection process before [the improperly selected arbitrator] during the arbitration proceedings." *Id.* Nor had the plaintiff "sought an order from the district court compelling arbitration before a properly selected arbitrator pursuant to sections 4 and 5 of the FAA." *Id.* Contrary to the Union's assertion that the plaintiff in *Brook* waived his objection to an improperly selected arbitrator by not objecting "at that time on that basis," *Brook* stands for the "well settled [proposition] that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Id.* (citing *Marino v. Writers Guild of Am., E., Inc*., 992 F.2d 1480, 1484 (9th Cir. 1993)).

Turning to the facts of this case, *Brook* is simply inapposite. Here, the Company never acquiesced in the arbitration before Feldman. Indeed, as the Union concedes, counsel for the Company appeared at the hearing "to object to the Arbitrator presiding." (Doc. No. 31 at p. 4.) Moreover, and unlike *Brook*, in this case the Company *did* seek relief from this Court prior to the arbitration, and the complaint specifically identifies the Company's contention that Feldman was not selected pursuant to the terms of the CBA. (Doc. No. 1 at ¶¶ 11, 19-22.)

The Sixth Circuit has held "[t]he party claiming waiver carries the burden of proof." *Nationwide*, 330 F.3d at 846. In this case, the Company repeatedly objected to Feldman's appointment as arbitrator, sought (albeit unsuccessfully due to jurisdictional limitations contained in the Norris-LaGuardia Act) pre-arbitration injunctive relief from this Court based specifically on the ground that Feldman was improperly selected pursuant to the CBA, and appeared at the arbitration hearing to *again* object specifically to Feldman's appointment. The

Court concludes, therefore, that the Union has failed, and failed miserably, to meet its burden of proving the Company waived its objection to Feldman's selection.

Returning to the issue of Feldman's selection under the CBA, it is clear (and undisputed) that he was not selected pursuant to the procedures listed in paragraph C of Article XVII, because he was not selected from a panel of nine FMCS arbitrators with NAA credentials, as the clear and unambiguous language of Article XVII requires. Therefore, Feldman was not properly selected by the parties and "acted 'outside his authority' by resolving a dispute not committed to arbitration." *Michigan Family Resources*, 475 F.3d at 753. Having reached the conclusion that the arbitrator acted outside his authority and resolved a dispute not committed to arbitration, this Court need not address the remaining questions posed by *Michigan Family Resources*.[4] The Company's Motion to Vacate the Award is **GRANTED**. The Union's cross-motion to confirm and enforce the Award is **DENIED**.

## A.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) governs summary judgment motions and provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by

---

[4] This Court notes, however, that asking an arbitrator to pass judgment on the propriety of his own selection under a CBA raises serious conflict of interest issues.

depositions, answers to interrogatories, or additional affidavits.

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or pleadings; rather, its response must—by affidavits or as otherwise provided by this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### 1. The Company has no Duty to Pay Feldman's Fee

The material facts relevant to Feldman's fee are not in dispute. The Union has paid Feldman's fee in its entirety, and the Company has refused to reimburse the Union for the one-half of the fee that the Union asserts it owes. The Union now seeks a judgment forcing the

17

Company to pay for an unauthorized arbitration that it did not request, participate in, and in fact protested at every opportunity. In its counterclaim, the Union asserts that the Company is obligated under the CBA and AAA rules "to pay half of the arbitrator's bill for this case and any further charges." (Doc. No. 23, ¶ 100.) The Union does not point to any provision of the CBA, however, and the Company cannot be held responsible for payment of the fee under AAA rules when the Company correctly refused to participate in an unauthorized arbitration. Therefore, the Union's motion for summary judgment as to its counterclaim for Feldman's fee is **DENIED**; the Company's motion for summary judgment as to the Union's counterclaim is **GRANTED**.

### 2.     *Declaratory Relief to the Limited Extent of the Perry Grievance*

"Even in the very rare instances when an arbitrator's procedural aberrations rise to the level of affirmative misconduct, as a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result, since this step would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective-bargaining agreement. Instead, the court should simply vacate the award, thus leaving open the possibility of further proceedings if they are permitted under the terms of the agreement." *Misco*, 484 U.S. at 41. This Court expressly declines to reach any decision as to the merits of Perry's grievance or the application of the CBA to future disputes. This Court, rather, and consistent with *Misco*, is "simply vacat[ing] the award," and "leaving open the possibility of further proceedings if they are permitted under the terms of the agreement." *Id.* To the extent that parties seek to arbitrate the Perry grievance, however, they are directed to select an arbitrator in conformance with Article XVII (C) of the CBA, and consistent with this Court's opinion. To this limited extent, the Company's request for declaratory relief is **GRANTED**.

18

3.      *The LMRA does not Authorize Attorney's Fees Absent Bad Faith*

Section 301 of the Labor Management Relations Act does not authorize an award of attorney's fees as an element of damages. *Knollwood Cemetery Ass'n v. United Steelworkers of America*, 789 F.2d 367, 369 (6th Cir. 1986). "Under the American Rule it is well established that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Summit Valley* Indus. *v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982) (internal quotations and citations omitted). While *Summit Valley* left open the possibility of a court using its equitable powers to make exceptions to the American Rule to award fees "where necessary to further the interests of justice," the Court finds exercising those powers would be inappropriate in this case, particularly since the Company has made no substantial attempt to justify its claim for fees. Therefore, the Company's motion for attorney's fees is **DENIED**.

## II.     CONCLUSION

For the foregoing reasons, the Company's motion to vacate the Award is **GRANTED**. The Union's cross-motion to enforce the Award is **DENIED**. The Company's motion for summary judgment as to the Union's counterclaim for payment of the arbitration fee is **GRANTED** and the Union's cross-motion for summary judgment as its counterclaim is **DENIED**. The Company's motion for summary judgment as to declaratory relief and an order compelling arbitration before an FMCS arbitrator is **GRANTED IN PART**, and the Company's motion for attorney's fees is **DENIED**.

**IT IS SO ORDERED**.

Dated:      April 8, 2010                       _____
                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**

19